1

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK**

2

3    UNITED STATES OF AMERICA,             )
                                          ) Case No. 1:21-CR-00053
4                                          )                (WMS)
                    Plaintiff,      )
5                                          )
     vs.                                   ) December 1st, 2021
6                                          ) 3:07 p.m.
     DAVID MONDORE,                        )
7                                          )
                    Defendant.      )
8

9                        **TRANSCRIPT OF SENTENCING**
                **BEFORE THE HONORABLE WILLIAM M. SKRETNY**
10                 **SENIOR UNITED STATES DISTRICT JUDGE**

11
     <u>APPEARANCES</u>:
12
     For the Plaintiff:    TRINI E. ROSS, ESQ.
13                         UNITED STATES ATTORNEY
                           BY:  CHARLES KRULY, ESQ.
14                         ASSISTANT UNITED STATES ATTORNEY
                           138 Delaware Avenue
15                         Buffalo, NY 14202

16   For the Defendant:    FEDERAL PUBLIC DEFENDER'S OFFICE
                           BY:  JEFFREY BAGLEY, ESQ.
17                         ASSISTANT FEDERAL PUBLIC DEFENDER
                           300 Pearl Street, Suite 450
18                         Buffalo, NY 14202

19   Probation Officer:    JACLYN SAINSBURY

20   Victim:               NATALIE CLAUS

21   Court Reporter:       MEGAN E. PELKA, RPR
                           Robert H. Jackson US Courthouse
22                         2 Niagara Square
                           Buffalo, NY 14202
23                         (716) 364-6449

24

25

03:07PM    1              THE CLERK:  Criminal case 21-53 United States vs.

03:07PM    2     David Mondore.

03:07PM    3              THE COURT:  Okay.  Good afternoon everyone.  As you

03:08PM    4     can see, my staff does not have masks.  If any of you wish to

03:08PM    5     remove yours, we are all vaccinated and whatever makes the

03:08PM    6     attorneys and the parties and the visitors most comfortable,

03:08PM    7     you're free to do that in the courtroom.

03:08PM    8        This matter is set for sentencing.  I'm ready to proceed.

03:08PM    9     It's been around for some time now and I have reviewed, in

03:08PM   10     detail, the submissions.  And for record purposes I'm going to

03:08PM   11     ask the attorneys and the individual who is being sentenced

03:08PM   12     today to identify himself for the record.  If you would start

03:08PM   13     with the government please, Mr. Kruly?

03:08PM   14              MR. KRULY:  Yes, Your Honor.  Charles Kruly for the

03:08PM   15     United States.  Good afternoon.

03:08PM   16              THE COURT:  Good afternoon.

03:08PM   17              MR. BAGLEY:  Good afternoon, Judge.  Jeff Bagley for

03:08PM   18     Mr. David Mondore.

03:08PM   19              THE COURT:  All right, Mr. Bagley.  Good afternoon.

03:08PM   20              THE DEFENDANT:  Good afternoon, Your Honor.  David

03:09PM   21     Mondore.

03:09PM   22              THE COURT:  All right, Mr. Mondore.  Good afternoon.

03:09PM   23     As you know, you have certain rights that relate to

03:09PM   24     sentencing.  I know that we talked about this back when you

03:09PM   25     pled guilty back in June of this year.  But specifically, if

03:09PM  1  there is going to be an appeal, one, you have an attorney

03:09PM  2  right until your case is complete in all respects.  If you are

03:09PM  3  going to take an appeal, you need to be eligible, and that

03:09PM  4  requires that you or your attorney file a Notice of Appeal

03:09PM  5  within 14 days after I complete your sentencing.  Do you

03:09PM  6  understand that?

03:09PM  7          THE DEFENDANT:  Yes, sir.

03:09PM  8          THE COURT:  Okay.  I am going to give you the

03:09PM  9  opportunity to make a statement and I will listen very

03:09PM  10  carefully to what you have to say.  You don't have to say

03:09PM  11  anything.  I've reviewed all the submissions, the legal brief

03:10PM  12  of your attorney, his sentencing factor statements, the

03:10PM  13  government's memorandum with respect to sentencing.

03:10PM  14    There's also a very detailed presentence report that was

03:10PM  15  authored by Ms. Sainsbury who is here from probation.  And the

03:10PM  16  report itself was originally dated back in August and it was

03:10PM  17  amended in October or at least updated in October.

03:10PM  18    Is there anything since that time, Ms. Sainsbury, that

03:10PM  19  needs to be added?

03:10PM  20          P.O. SAINSBURY:  No more changes, Your Honor.

03:10PM  21          THE COURT:  Okay.  Thank you.  I have reviewed that

03:10PM  22  report in detail.  I take it, Mr. Bagley, you've received it

03:10PM  23  and discussed it with Mr. Mondore?

03:10PM  24          MR. BAGLEY:  Yes, Judge.  We have.

03:10PM  25          THE COURT:  Okay.  And Mr. Mondore, you're familiar

| | | |
|---|---|---|
| 03:10PM | 1 | with it and discussed it with your attorney, correct? |
| 03:10PM | 2 | THE DEFENDANT:  Yes, sir. |
| 03:10PM | 3 | THE COURT:  Okay.  As you know, there's a lot of |
| 03:10PM | 4 | information in there and I will consider all of that |
| 03:10PM | 5 | information.  I'm going to seal the report.  I do that as a |
| 03:11PM | 6 | matter of course and for obvious reasons because there's |
| 03:11PM | 7 | information in the report that certain individuals would not |
| 03:11PM | 8 | want made public.  I think it's a fairer process to seal it. |
| 03:11PM | 9 | But just so everybody is on notice, I am relying on the |
| 03:11PM | 10 | information in that particular report for purposes of coming |
| 03:11PM | 11 | to what should be a final sentence in this case. |
| 03:11PM | 12 | My objective in this case, like it is in every case, is to |
| 03:11PM | 13 | impose a sentence that's sufficient but not greater than |
| 03:11PM | 14 | necessary and that's not necessarily an easy task.  And I'm |
| 03:11PM | 15 | going to work at, again, incorporating everything that's |
| 03:11PM | 16 | brought to my attention today that will supplement the |
| 03:12PM | 17 | information in the presentence report; in particular, what's |
| 03:12PM | 18 | at paragraphs 11 through 27 on pages 4 through 9. |
| 03:12PM | 19 | That information is the factual basis that supports both |
| 03:12PM | 20 | the plea that was taken before me and that together with the |
| 03:12PM | 21 | mitigating and aggravating circumstances will support the |
| 03:12PM | 22 | sentence that will be imposed today.  There's a lot at stake |
| 03:12PM | 23 | here.  This is a case that does concern me.  Like every case, |
| 03:12PM | 24 | it should be that way.  I mean, if you are a Judge and you |
| 03:12PM | 25 | sentence without being concerned, the likelihood that the |

4

03:12PM 1 sentence is appropriate is diminished.

03:12PM 2     And I say that there's cause for concern here because this

03:12PM 3 is a different kind of fraud case, at least from my

03:13PM 4 perspective, and that's addressed in the submissions from the

03:13PM 5 attorneys and from probation.  But it's a kind of fraud that

03:13PM 6 was and can be perpetuated without a face-to-face contact with

03:13PM 7 what turns out to be eventually the victims in this case.

03:13PM 8     And what the case does -- and I don't know profess to be

03:13PM 9 up to speed, I think, in terms of all of the intellectual and

03:13PM 10 practical developments of the internet, but I know enough to

03:13PM 11 know that a scheme like this and crime like this reflects the

03:13PM 12 dark side, if you will, the negative side, of social media

03:13PM 13 applications.  And that makes it easy to take advantage of

03:14PM 14 others and individuals who become victims and that's what was

03:14PM 15 done here.

03:14PM 16     And the numbers to me are substantial.  I don't know how

03:14PM 17 many individuals could be touched by a scheme like this.  I

03:14PM 18 know that in this case we're talking about 300 or so Snapchat

03:14PM 19 accounts and we have at least 14 established victims.

03:14PM 20         MR. KRULY:  In this district.  Correct.

03:14PM 21         THE COURT:  In this district.  And one victim is a

03:14PM 22 lot.  Fourteen is more than a lot.  I mean, that's no

03:14PM 23 mathematical genius statement, I guess, but that's a lot.  And

03:14PM 24 the ramifications and the results to individual victims can be

03:14PM 25 devastating and catastrophic.  And that's not overstating it

03:15PM  1  because so many of these matters involve the most personal

03:15PM  2  sides of individuals.  And I've read the victim letter in this

03:15PM  3  case.  And I know a lot about you.  And there's a lot of what

03:15PM  4  I consider to be positive qualities and I read the seven

03:15PM  5  letters that are part of my file that were sent to me.

03:15PM  6      I mean, frankly, to me, everything doesn't quite add up,

03:15PM  7  but that's usually the case because I don't have all the

03:15PM  8  information.  And that's why listening to you and your

03:15PM  9  attorney will probably make a difference because I have not

03:15PM  10  really decided what the actual sentence should be.  And I'll

03:16PM  11  explain to you why and then I'll listen to your attorney

03:16PM  12  first.

03:16PM  13      And I know he knows by my statement that I've read all of

03:16PM  14  the materials and I've read from him a memorandum of --

03:16PM  15  relating to sentencing that's very persuasive.  And I'll say

03:16PM  16  the same thing to Mr. Kruly, because the government's

03:16PM  17  positions are also very well-put and persuasive.  So that

03:16PM  18  information has to be sorted through.

03:16PM  19      I mentioned what was troubling to me in terms of the

03:16PM  20  numbers and the effect that this kind of crime can have on

03:16PM  21  individuals.  You know what I think is important here, is now

03:16PM  22  you've got yourself in a hole that you've dug for yourself.

03:16PM  23  And you're going to go through life with the label of being a

03:17PM  24  convicted felon.  And that's significant.  That's something

03:17PM  25  that you're going to have to overcome.

03:17PM  1      I -- you know, I look at the letters that have been sent

03:17PM  2  to me and I mean they're very positive.  They talk about what

03:17PM  3  a hard worker you are.  They talk about where your friends met

03:17PM  4  you at a church youth group.  And you're characterized as an

03:17PM  5  honorable guy and smart and creative and visionary.  All those

03:17PM  6  things are, I'm sure, what you are in many respects.

03:17PM  7      On the other hand, you know, what I don't get is I think

03:17PM  8  the gentleman that wrote from -- is it Witchcraft, which was

03:17PM  9  the company that I guess you were going to be hired as a

03:17PM  10  consultant before it went under and it seemed to me that that

03:18PM  11  says a lot for you in one respect.  And then I look at your

03:18PM  12  personal financial situation and your negative net worth is

03:18PM  13  $65,000.  For a supposedly talented guy, something is amok and

03:18PM  14  I don't know exactly what it is.

03:18PM  15      But the key here is, to me, is a guy that has a lot of

03:18PM  16  talent.  I guess your culinary expertise is what most

03:18PM  17  individuals seem to highlight as a talent that they don't see

03:18PM  18  that often.  And, I mean, I must admit you don't look like a

03:18PM  19  typical chef but nonetheless, that kind of talent with that

03:19PM  20  kind of persona can be a real plus, but when you balance where

03:19PM  21  you could be and what you got yourself into with the hurt that

03:19PM  22  you've caused in the process, that's hard to reconcile.

03:19PM  23      So with that, Mr. Bagley, it's a difficult case to

03:19PM  24  sentence.  And you and me, we spar every now and then with the

03:19PM  25  various cases that you are involved in, but and I always

03:19PM   1   listen to what you have to say and this case is no exception.

03:19PM   2   I do want to hear from you.  I really don't want to get into

03:19PM   3   the repetition of the facts beyond what I basically talked

03:19PM   4   about because they don't affect the calculations.

03:20PM   5       And just so I don't forget to do it for the record, some

03:20PM   6   of this, as you probably know Mr. Mondore, I have to do for

03:20PM   7   record purposes, otherwise the sentencing is not recognized as

03:20PM   8   legally sufficient, but the numbers in the presentence report

03:20PM   9   are correct and you know what they are better than I know

03:20PM  10   probably because the numbers are 17 for the crime and a

03:20PM  11   criminal history of I.  And again, that's a mitigating factor.

03:20PM  12   And the fact that you had -- and I know Ms. Sainsbury from

03:20PM  13   probation has emphasized the fact that there is virtually no

03:20PM  14   prior criminal history and that's a plus.

03:20PM  15       So how you got yourself into this mess, I'll never figure

03:20PM  16   that out, but the sentence has to address the end result.  And

03:20PM  17   the advisory range for purposes of sentencing is 24 to 30

03:20PM  18   months.  That's a lot of time.  And as I look at it, any day

03:21PM  19   in jail is a lot of time, but there has to be accountability

03:21PM  20   for adult conduct.  And you're what, 30 years old?

03:21PM  21           THE DEFENDANT:  Yes, sir.

03:21PM  22           THE COURT:  So you're not a kid.  There has to be

03:21PM  23   uniformity at sentence and there has to be deterrence so that

03:21PM  24   the avenues aren't open to just anybody that wants to mess

03:21PM  25   with peoples' private lives.  And these Snapchat accounts were

03:21PM  1   so easy to access and you took advantage of that, but others

03:21PM  2   shouldn't.  And sometimes sentencing has to send that message.

03:21PM  3   All right.  Mr. Bagley?

03:21PM  4          MR. BAGLEY:  Thank you, Judge.  You know, as you

03:21PM  5   often do, Your Honor, I thought that you encapsulated some of

03:21PM  6   the contrast, some of the overriding issues that go into this

03:22PM  7   sentencing -- especially for David -- going into every

03:22PM  8   sentencing, especially for this one with David, Judge.  And

03:22PM  9   sentencing is often a host of different contrast, different

03:22PM  10  interests competing.  Obviously your job, an unenviable one as

03:22PM  11  it is, is to arrive as a sentence that is just but no greater

03:22PM  12  than necessary.

03:22PM  13         I think, for David, that one of the head scratchers is, is

03:22PM  14  how does somebody who leads this -- for 28, 29 years, leads --

03:22PM  15  I hate the word normal, Judge, but leads a perfectly lawful

03:22PM  16  and I will use the word normal life, average life, maybe

03:22PM  17  better than average life, Judge, right?

03:22PM  18         As you point out, he is a skilled chef, a skilled

03:22PM  19  businessman, a dedicated son, dedicated brother, and overall a

03:23PM  20  good person, but yet he finds himself sitting here, Judge,

03:23PM  21  next to me awaiting sentencing for a federal crime.  One of

03:23PM  22  the explanations, not an excuse, but one explanation is that

03:23PM  23  David just didn't simply -- simply didn't realize the gravity

03:23PM  24  and the seriousness of what he was doing when he was doing it

03:23PM  25  sitting behind a computer, not realizing that he's having an

03:23PM 1   actual and real effect on other people out there in the real

03:23PM 2   world.  And again, that does not excuse David's conduct, but I

03:23PM 3   think it helps to explain it.  And there is no question, as we

03:23PM 4   sit here today, that David now understands and realizes the

03:23PM 5   severity of his conduct, realizes that what he did was

03:24PM 6   extremely wrong and is ashamed of himself for engaging in that

03:24PM 7   conduct.

03:24PM 8       And so that's important obviously, Judge, because it goes

03:24PM 9   to whether or not in every sentencing, I think the Court has

03:24PM 10  to consider is this individual that I'm sentencing, am I going

03:24PM 11  to see him here again at some point in the future?  Is he

03:24PM 12  going to engage in this conduct?  Am I going to be available

03:24PM 13  to protect the public from this type of conduct?  Do I have to

03:24PM 14  send this individual in prison to order to protect against

03:24PM 15  this type of conduct?

03:24PM 16      And I think in the case of David, there should be no doubt

03:24PM 17  that he has for, again, lack of a better word, learned a very,

03:24PM 18  very hard lesson here that what he did, the conduct that he

03:24PM 19  engaged in is not tolerated and he understands that now.

03:24PM 20  There's no question about it.

03:24PM 21      How many defendants, Judge, do you sentence where that

03:25PM 22  defendant can say, after I pled guilty to this, after I

03:25PM 23  realized what I did was wrong, I got to sit down with my mom,

03:25PM 24  got to sit down with my mother and discuss that.  And I

03:25PM 25  thought that that part of his mother's letter to Your Honor

03:25PM   1   was telling because, you know, it showed that he takes this

03:25PM   2   very seriously.  It's not just a letter that you receive often

03:25PM   3   from a family member that says all the good things about the

03:25PM   4   defendant, but this letter says that they actually talked

03:25PM   5   about the crime itself and how it affected the victims and the

03:25PM   6   way that he felt about it.  And so that shows the type of

03:25PM   7   growth that I think the Court should consider.  It goes to the

03:25PM   8   history and characteristics of David.

03:25PM   9        THE COURT:  Yeah, I know it does and I noted that in

03:26PM   10  the record.  I didn't mean to interrupt you, but the comment

03:26PM   11  from your mother was very compelling.  And she didn't avoid

03:26PM   12  the seriousness of what's involved here because it does, in

03:26PM   13  the second-to-last paragraph say, my son was caught up in

03:26PM   14  something very hurtful to others and downright wrong legally

03:26PM   15  and morally and that's really what we're dealing with here.

03:26PM   16        MR. BAGLEY:  Right, Judge.  Right.  And so I don't

03:26PM   17  have much else to say.  I know that David does have words that

03:26PM   18  he would like to share with the Court.  I will just conclude

03:26PM   19  by saying that the conduct itself, he wasn't targeting minors,

03:26PM   20  he didn't coerce, didn't sell images that he received, was not

03:26PM   21  out about some sort of animus or some sort of revenge.  So

03:26PM   22  none of those aggravating factors that sometimes exist in

03:26PM   23  cases like this exist for David.  So I'll conclude with that

03:27PM   24  and ask that the Court listen to Mr. Mondore.

03:27PM   25        THE COURT:  Okay, Mr. Bagley.  Thank you.

03:27PM  1   Mr. Mondore?

03:27PM  2        THE DEFENDANT:  Thank you, Your Honor.  I would just

03:27PM  3   like to say a few things.  I was raised to have a positive

03:27PM  4   impact on everybody I encounter.  And for most of my life, I

03:27PM  5   have lived that way.  Unfortunately -- and I had to take

03:27PM  6   responsibility.  I let down my family, friends, loved ones who

03:27PM  7   look up to me and I really hurt people and their loved ones,

03:27PM  8   their friends.

03:27PM  9        And reading the victim's letter was very difficult, as

03:28PM  10  I've always tried to help people progress and I obviously had

03:28PM  11  the exact opposite effect; not just on this person, but on --

03:28PM  12  and it's hard.  Like, to them, I'm a monster and that's

03:28PM  13  deserved.  And to the families -- and they'll always probably

03:28PM  14  view me as that, and that's fair, but it's also hard to be

03:28PM  15  that person.  And I like -- I won't live the rest of my life

03:28PM  16  like that.

03:28PM  17       I just refuse to let all the people who still support me

03:28PM  18  down again and to do that damage.  Thank you.  And I don't

03:29PM  19  know if it's appropriate, but I'd like to personally apologize

03:29PM  20  to the victim here today and their family.  I'm very sorry for

03:29PM  21  what I caused you.  I don't deserve your forgiveness.  I'm

03:29PM  22  sorry.

03:29PM  23       THE COURT:  Okay.  Thank you.  Mr. Kruly?

03:29PM  24       MR. KRULY:  Judge, I'm going to yield most of my time

03:29PM  25  to Natalie Claus, one of the victims in this case who would

03:29PM   1   like to exercise her right under the Crime Victims Act to

03:29PM   2   address the Court and I'll have a few brief comments.  If the

03:29PM   3   Court would indulge me, I'll get Ms. Claus.

03:30PM   4       Judge, the reason why I'm really not going to spend much

03:30PM   5   time talking is because I think Ms. Claus can say in a way

03:30PM   6   that I never can and emphasize in a way that I never can why

03:30PM   7   this is not a victimless crime.  I think the Court hit the

03:30PM   8   nail on the head.  This is an intensely personal crime that

03:30PM   9   strikes at the heart of a person's sense of privacy.  It's the

03:30PM  10   21st century and akin to, frankly, breaking into someone's

03:30PM  11   home and stealing their deepest secrets, their diary, their

03:30PM  12   photos, their family treasures.

03:30PM  13       The internet just allows people to do this on an

03:30PM  14   industrial scale over and over and over and lowers the risk,

03:30PM  15   increases the reward.  And when a crime is so easy to commit

03:30PM  16   over and over hundreds of times without any meaningful risk or

03:30PM  17   any meaningful chance of being caught, I think that a

03:30PM  18   guideline sentence is sufficient but not greater than

03:30PM  19   necessary to promote of the purpose of sentencing and

03:30PM  20   specifically the seriousness of the crime and the need to

03:31PM  21   deter others.

03:31PM  22       So with that, Judge, I'm going to yield to Ms. Claus.

03:31PM  23           MS. CLAUS:  Forgive me.  It's a bit long.

03:31PM  24           THE COURT:  Sure.  State your name please.

03:31PM  25           MS. CLAUS:  My name is Natalie Claus.

03:31PM  1        THE COURT:  Okay.  You know that I read the statement

03:31PM  2   that is part of the file --

03:31PM  3        MS. CLAUS:  I do.

03:31PM  4        THE COURT:  -- that goes to the affect on you of what

03:31PM  5   took place, right?

03:31PM  6        MS. CLAUS:  Yes.

03:31PM  7        THE COURT:  All right.

03:31PM  8        MS. CLAUS:  I'm a history major.  I wanted to

03:31PM  9   introduce myself a little bit.  I'm a history major --

03:31PM  10       THE COURT:  At Geneseo.

03:31PM  11       THE DEFENDANT:  -- at Geneseo.  I was supposed to

03:31PM  12   graduate last May, a full year early.  I'm graduating in a

03:31PM  13   couple weeks which is still a semester early, but it's not

03:31PM  14   what I planned.  If I may, I'd like to address the defendant

03:31PM  15   directly.  I don't know what that night was like for you.

03:31PM  16   Honestly, I doubt you even remember it, but I do.  I remember

03:31PM  17   every detail.

03:31PM  18      It was December 5th.  I had just turned 19 two months

03:32PM  19   before.  Finals week was coming up and I had a project due for

03:32PM  20   my African Nationalism History class due the next day.  I was

03:32PM  21   sitting in one of the academic buildings in a booth with a

03:32PM  22   bunch of my sorority sisters and we were just doing homework

03:32PM  23   and talking and joking and laughing.  I stood up and walked

03:32PM  24   over to one of the printers to get some research for my

03:32PM  25   project and my friend Cassidy walked past me and she said,

03:32PM   1   cute picture, but be careful who you send that to.  And I

03:32PM   2   asked her what she was talking about.  And she said, the

03:32PM   3   Snapchat you just sent me.  And I said, I'm not logged into my

03:32PM   4   Snapchat.  I've been working.  I haven't been on my phone in

03:32PM   5   over an hour.  The look on her face is -- I will never forget

03:32PM   6   the look on her face.  It was horrifying as she realized that

03:33PM   7   I really didn't know what she was talking about.

03:33PM   8        And it was like a scene from a movie.  You know they say

03:33PM   9   everything around you slows, my ears were ringing, and I felt

03:33PM  10   like I couldn't breathe, and honestly I don't think I was.

03:33PM  11   All I could focus on was making it back to the booth.  I was

03:33PM  12   fumbling for my phone and then there was a sinking realization

03:33PM  13   that this wasn't a dream, that this was happening.

03:33PM  14        And then there was a phone call from my mother who knew

03:33PM  15   before I did, because one of the people you sent that photo to

03:33PM  16   was my cousin.  My mom's niece and my aunt overheard her

03:33PM  17   talking about it and called my mom who called me.  I started

03:33PM  18   hyperventilating and sobbing in the middle of the building

03:33PM  19   which is what I'm doing now and I hate doing it.  And people

03:34PM  20   were staring.  And it was because of you.

03:34PM  21        I called UPD.  The only officers on duty were men and

03:34PM  22   that's who I had to tell.  One of them was fine and the other

03:34PM  23   one had this look on his face like he was judging me like it

03:34PM  24   was my fault for even having those photos in the first place.

03:34PM  25   I walked home in the cold and my friend Kate took everything

03:34PM   1   in my dorm room that was sharp so that I couldn't hurt myself.

03:34PM   2   She made me eat something, but when she left, I was so close

03:34PM   3   to ending it.  I didn't think anyone was going to help me.  I

03:34PM   4   didn't think anybody would care.  I was humiliated and I had

03:34PM   5   my pills in my hand.  Luckily two of my friends were still

03:34PM   6   awake so they let me sit with him until I was safe enough to

03:34PM   7   go home and just go to sleep, but I didn't leave my room for a

03:35PM   8   week.

03:35PM   9       I had to tell that story over and over again for months to

03:35PM  10   UPD, to the Title 9 coordinator, to a State Police detective

03:35PM  11   and then eventually the FBI and not to mention countless

03:35PM  12   friends and family members.  You didn't know anything about

03:35PM  13   me.  You didn't know that I struggled with disordered eating

03:35PM  14   in high school or that I suffer from anxiety and depression.

03:35PM  15   You didn't know that I was a survivor of rape.  And that's why

03:35PM  16   I took the photos, to feel powerful in my own body again.

03:35PM  17       But I was just an image on a screen to you.  Did you know

03:35PM  18   that people took screen shots of that photo and sent them to

03:35PM  19   my sorority sisters laughing at me, mocking me because they

03:35PM  20   thought I was the one who sent it?  I can't walk across my

03:35PM  21   campus anymore without wondering who's seen it.  I failed

03:36PM  22   classes because I was so depressed and I've never done that

03:36PM  23   before.  People keep telling me that I'm so strong and that

03:36PM  24   I'm so brave, but I don't feel like that.  I just feel weak

03:36PM  25   and small and I've spent the last two years in complete hell

03:36PM  1  all because you wanted naked photos of me because you thought

03:36PM  2  you had some sort of right to them like I was nothing more

03:36PM  3  than an image search.  I'm more than just that photo.

03:36PM  4      And then I got word that you had been arrested and that

03:36PM  5  you were pleading guilty and I thought it was finally over.

03:36PM  6  All that was left was the sentencing.  But every time it got

03:36PM  7  close, it got rescheduled and the rug was getting pulled out

03:36PM  8  from under me again, first because of scheduling conflicts,

03:36PM  9  and I understand that that happens, but the last two times

03:37PM  10  were because of you again.

03:37PM  11      And it felt just like two years ago.  It felt like my life

03:37PM  12  wasn't my own.  It felt like I was just a puppet.  I mean,

03:37PM  13  that was all you thought of me as, right?  It wasn't enough

03:37PM  14  that you violated my trust and my privacy and took those

03:37PM  15  photos.  You had to use my body as a lure to get more photos

03:37PM  16  from my friends, people who trusted me.  You have no idea how

03:37PM  17  dehumanizing that is.

03:37PM  18      I felt powerless and again on the 9th and again on the

03:37PM  19  16th because of you and your excuses and your games and I hope

03:37PM  20  you remember that night because I will never be able to forget

03:37PM  21  it.  I'll never just get over this.  I don't think you're a

03:37PM  22  monster.  I think that that lets you off too easy.  You are a

03:38PM  23  person.  And you did this to another person.  And it wasn't

03:38PM  24  just me.  I'm the only one speaking here today, but there are

03:38PM  25  over 300 people out there, 300 accounts you admitted to

| | | |
|---|---|---|
| 03:38PM | 1 | accessing, that are just like me.  Thank you. |
| 03:38PM | 2 | MR. KRULY:  Judge, we'd ask for a guideline sentence. |
| 03:39PM | 3 | THE COURT:  Okay, Mr. Kruly.  I guess if we had any |
| 03:39PM | 4 | doubt what the term victim means, it's come graphically to |
| 03:39PM | 5 | life in a statement such as that.  As I mentioned, I did not |
| 03:39PM | 6 | make my mind up entirely with respect to the sentence in this |
| 03:39PM | 7 | case and I need a couple of minutes.  I've got a couple things |
| 03:39PM | 8 | I want to check out. |
| 03:39PM | 9 | Ms. Sainsbury, can you join me for a moment and bring your |
| 03:39PM | 10 | file with you please?  It will probably be about 10 minutes or |
| 03:40PM | 11 | so. |
| 03:40PM | 12 | THE CLERK:  All rise. |
| 03:40PM | 13 | (A recess was taken from 3:40 p.m. to 3:59 p.m.) |
| 03:59PM | 14 | THE CLERK:  All rise. |
| 03:59PM | 15 | THE COURT:  Okay.  Thank you.  Please have a seat. |
| 03:59PM | 16 | Okay.  Mr. Mondore, I don't want to over dramatize this, but |
| 03:59PM | 17 | it certainly cannot be lost on you that this is a serious |
| 03:59PM | 18 | crime.  And not just for you, but because it's the internet |
| 04:00PM | 19 | and because of what that means to other potential |
| 04:00PM | 20 | perpetrators. |
| 04:00PM | 21 | And Ms. Sainsbury and I had a lot to discuss in terms of |
| 04:00PM | 22 | some of the questions that I had that have been left |
| 04:00PM | 23 | unanswered and are still troubling.  And from my standpoint |
| 04:00PM | 24 | it's, why would you do something like this?  And there are no |
| 04:00PM | 25 | answers here.  And nobody's really provided that.  And a lot |

04:00PM 1    of times, it's easier to get a read on somebody, and you're a

04:00PM 2    difficult read.  And you've had probably more contact with

04:01PM 3    probation than with me and you probably know because I know

04:01PM 4    you were watching me as I was speaking.  I was watching you as

04:01PM 5    you were speaking.  That involves getting a read on each

04:01PM 6    other.  And there are issues of remorse and being sorry for

04:01PM 7    what has been done.

04:01PM 8        Of course I listened very closely to Ms. Claus and

04:01PM 9    obviously whoever heard what she said would obviously be moved

04:01PM 10   by it because it was very personal.  This crime is very

04:01PM 11   personal.  A lot of victims.  One victim here.  I listened

04:02PM 12   carefully to what she had to say and her vulnerability and her

04:02PM 13   continued hurt from what took place and her explanation as to

04:02PM 14   why her photo was where it was.  And in hindsight, she

04:02PM 15   probably wouldn't do it again.  And so there were a lot of

04:02PM 16   considerations here.

04:02PM 17       The guideline is 24 to 30 months.  Is the crime serious

04:02PM 18   enough to warrant a sentence like that?  Yes.  Is a sentence

04:02PM 19   like that mitigatable?  And I think it is in this case because

04:03PM 20   of all of the characteristics that are addressed and what

04:03PM 21   people have said about you.

04:03PM 22       I don't know if what I observed you say and the way you

04:03PM 23   appeared to me in saying it, was totally sincere.  It was

04:03PM 24   emotional.  And I don't know.  Sometimes it's a gut feeling

04:03PM 25   that is determinative, but I can't say I have a comfort level

04:03PM  1  either way and that's going to factor into the sentence in

04:03PM  2  this case.  I have no doubt what you did after listening to

04:04PM  3  Ms. Claus and putting this together as far as the other

04:04PM  4  individuals are concerned.  I confess I don't understand why

04:04PM  5  individuals would do what they did to make themselves

04:04PM  6  accessible, but what you did in my view was reprehensible and

04:04PM  7  hurtful and personal.  And I still don't know why.

04:04PM  8      But I think it boils down to a sentence that emphasizes

04:04PM  9  both the mitigating and the aggravating circumstances.

04:04PM  10  Looking at 24 months or 30 months for what you did, yeah, it

04:05PM  11  could be justified, but in balance, that would be wrong I

04:05PM  12  think.  Recognizing that you are going to be a felon for life,

04:05PM  13  I think, should give a consoling moment to those that you have

04:05PM  14  offended because that's not going to go away.

04:05PM  15      And I'm going to put you on supervised release for two

04:05PM  16  years in addition to some jail time.  And in a sense, and

04:05PM  17  don't take this the wrong way, but you're being sentenced for

04:05PM  18  being a jerk among other things.  And if I read what your

04:05PM  19  mother said, I don't think she'd disagree with that.  And

04:05PM  20  you've hurt not only people you didn't know, but certainly

04:05PM  21  people that you do know and that's a low blow in my judgment.

04:06PM  22      This is case is more complicated than just you.  It's

04:06PM  23  complicated because it involves so many offshoots and so many

04:06PM  24  people that aren't here and I'm comfortable with the sentence,

04:06PM  25  but I want you to know that you've got a lot to prove.  And

04:06PM    1    you will be watched over the course of two years on your

04:06PM    2    supervised release.  I think the circumstances, all tolled,

04:06PM    3    warrant a departure from the guideline range and I'm going to

04:06PM    4    sentence you to six months.  And every day is tough time when

04:06PM    5    you're serving a sentence.  But if this doesn't teach a lesson

04:07PM    6    to you and others, I'm not sure what other kind of sentence

04:07PM    7    would.

04:07PM    8        And you can come out of this a lot better than you are

04:07PM    9    going in.  And I think that's important.  And I feel confident

04:07PM   10    that if you commit yourself to doing what your abilities will

04:07PM   11    allow you to do, you are going to be a better person after

04:07PM   12    this is all over.  And I don't think you'll be any better

04:07PM   13    after 6 months or after 30 months if you make up your mind

04:07PM   14    that that's what you need to do.

04:07PM   15        And you can play the system, you can play me, you can play

04:07PM   16    those that have confidence in you.  But if you do that, you're

04:08PM   17    going to lose your base.  And that doesn't make sense to me.

04:08PM   18    It just doesn't make sense.  You've got to pay the price.

04:08PM   19    You're man enough to understand that.  I think this case

04:08PM   20    addresses what someone like Ms. Claus has gone through and

04:08PM   21    others.

04:08PM   22        There will be other conditions.  You have to obey the

04:08PM   23    standard conditions of supervised release.  You cannot commit

04:08PM   24    any other crimes federal, state, or local.  You're a convicted

04:08PM   25    felon.  You cannot possess a firearm, ammunition, or a

04:08PM 1 dangerous device.  You cannot possess controlled substances.

04:08PM 2 And you must cooperate in the collection of a DNA sample as

04:09PM 3 required by the 1994 Crime Control Act of 2004, things that

04:09PM 4 will make you realize who you are now.  Because this offense

04:09PM 5 occurred after September 13th of 1994, drug testing is

04:09PM 6 required by the 1994 Crime Control Act.

04:09PM 7     A specific condition is that you shall not use or possess

04:09PM 8 any computer data storage device or any internet-capable

04:09PM 9 device unless you participate in the computer and internet

04:09PM 10 monitoring program of probation or unless authorized by the

04:09PM 11 Court or the United States Probation Office.  You must provide

04:09PM 12 the probation office advanced notification of any computers,

04:09PM 13 authorized services or connected devices that would be used

04:09PM 14 during the term of supervision.

04:09PM 15     The probation office is authorized to install any

04:10PM 16 application as necessary to surveil all activity on computers

04:10PM 17 or connected devices owned or operated by you.  You will be

04:10PM 18 required to pay the cost of monitoring services.  The

04:10PM 19 probation office shall be notified via electronic transmission

04:10PM 20 of impermissible or suspicious activity or communications

04:10PM 21 occurring on such computer or connected device consistent with

04:10PM 22 the computer monitoring policy in effect by the probation

04:10PM 23 office as triggered by impermissible or suspicious activity.

04:10PM 24     You shall consent to and cooperate with unannounced

04:10PM 25 examinations of any computer equipment owned or used by you.

04:10PM    1   This examination shall include but is not limited to retrieval

04:10PM    2   and copying of all data from the computers, connected devices,

04:10PM    3   storage media and any internal or external peripherals and it

04:10PM    4   may involve removal of such equipment for the purpose of

04:11PM    5   conducting a more thorough inspection.  Any such monitoring or

04:11PM    6   examinations shall be designed to avoid as much as possible

04:11PM    7   reading any privileged information or any private material

04:11PM    8   that is not illegal or reasonably likely to lead to illegal

04:11PM    9   material or evidence related to illegal activity.

04:11PM   10       You will be required to submit to a search of your person,

04:11PM   11   property, vehicle, place of residence, or any other property

04:11PM   12   under your control, based upon reasonable suspicion, and

04:11PM   13   permit confiscation of any evidence or contraband discovered.

04:11PM   14   You shall avoid all contact directly or indirectly with any of

04:11PM   15   the victims in this case.

04:11PM   16       Pursuant to Section 3663(a) of Title 18, you are ordered

04:11PM   17   to make restitution to the victim in the amount of $1,124.

04:12PM   18   The restitution is due immediately.  Interest on the

04:12PM   19   restitution is waived.  Restitution will be joint and several.

04:12PM   20   While incarcerated, if you are in UNICOR or non-UNICOR Grade

04:12PM   21   5, you shall pay $25 per quarter.  If assigned Grades 1

04:12PM   22   through 4 in UNICOR, you shall pay installments of 50 percent

04:12PM   23   of your monthly pay.

04:12PM   24       After considering the factors of Section 3664(f)(2), while

04:12PM   25   on that two years supervised release, you shall make monthly

04:12PM   1   payments at the rate of 10 percent of your monthly gross

04:12PM   2   income until your monetary obligation is satisfied.  You shall

04:12PM   3   provide the probation office with access to any requested

04:12PM   4   personal and/or business financial information.  The probation

04:12PM   5   office is authorized to release presentence and post-sentence

04:13PM   6   financial information submitted by you to the US Attorney's

04:13PM   7   Office for the use in the collection of any unpaid restitution

04:13PM   8   amount.

04:13PM   9       If restitution or a fine is owed, you shall notify the

04:13PM   10  probation office of any assets received and shall not disburse

04:13PM   11  your interest in any assets including but not limited to

04:13PM   12  income tax refunds, inheritance, insurance, lawsuits,

04:13PM   13  settlements or gambling winnings without approval of the US

04:13PM   14  Probation Office.  While the fine or restitution balance is

04:13PM   15  outstanding, you shall not incur any form of debt including

04:13PM   16  but not limited to the use of existing credit cards, new

04:13PM   17  credit cards, lines of credit, mortgages, or private loans

04:13PM   18  without the approval of the US Probation Office.

04:13PM   19      The Court finds that you do not have the ability to pay a

04:13PM   20  fine and I'm going to order that the fine possibility here be

04:14PM   21  waived.  You shall pay a special assessment though of $100.

04:14PM   22  That's due and payable immediately.  If you're incarcerated,

04:14PM   23  the payment obligation, if it's not fully paid, will begin

04:14PM   24  under the Inmate Financial Responsibility Program.  You shall

04:14PM   25  forfeit your interest in the property specifically set forth

04:14PM  1    in section 9 of the plea agreement and that's incorporated

04:14PM  2    herein and all of that's incorporated in the judgement.

04:14PM  3        It sounds complicated.  It's not.  It's basic.  In my

04:14PM  4    judgment, this is a fair sentence.  It's fair, just,

04:14PM  5    sufficient, not greater than necessary.  You have to make it

04:14PM  6    turn out right.  Nobody else can do it for you.  And in my

04:14PM  7    judgment, it sends the right message to those that have been

04:14PM  8    injured for what you have done and also those that may have

04:15PM  9    been contemplating doing something similar.  Do you understand

04:15PM  10   your sentence?

04:15PM  11            THE DEFENDANT:  Yes, Your Honor.

04:15PM  12            THE COURT:  Okay.  Mr. Kruly, anything to dismiss?

04:15PM  13            MR. KRULY:  Yes, Judge.  The complaint at 20-mj-5176

04:15PM  14   we move to dismiss.

04:15PM  15            THE COURT:  Okay.  No objection, Mr. Bagley?

04:15PM  16            MR. BAGLEY:  No, Judge.

04:15PM  17            THE COURT:  Ms. Sainsbury, did I miss anything?

04:15PM  18            P.O. SAINSBURY:  Your Honor, I just want to clarify.

04:15PM  19   I believe the restitution you ordered was $1,124.  We were

04:15PM  20   requesting $1,242.  I just want to make sure that number was

04:15PM  21   correct.

04:15PM  22            THE COURT:  I guess my math wasn't that good, so I

04:15PM  23   will change that to the $1,242.

04:15PM  24            P.O. SAINSBURY:  Thank you, Your Honor.

04:15PM  25            THE COURT:  All right.  That ends this case.  I will

04:15PM    1    allow voluntary surrender.  You will be notified.  Make sure

04:15PM    2    you get there on time at your own expense otherwise it becomes

04:15PM    3    vastly more complicated and it's not likely to be in your best

04:16PM    4    interest.

04:16PM    5              THE DEFENDANT:  Yes, sir.

04:16PM    6              THE COURT:  Okay.  Thank you very much.

04:16PM    7              MR. BAGLEY:  Thank you, Judge.

04:16PM    8    (Proceedings concluded at 4:16 p.m.)

           9

          10

          11

          12

          13

          14

          15

          16

          17

          18

          19

          20

          21

          22

          23

          24

          25

1              *     *     *     *     *     *     *

2

3              I certify that the foregoing is a

4         correct transcription of the proceedings

5         recorded by me in this matter.

6

7

8

9                              s/ Megan E. Pelka, RPR

10                             Official Court Reporter